Harry Kaufmann and Martha Kaufmann v. Commissioner. Harry Kaufmann v. Commissioner.
Kaufmann v. Commissioner
Docket Nos. 43289, 43346.
United States Tax Court
1954 Tax Ct. Memo LEXIS 247; 13 T.C.M. (CCH) 348; T.C.M. (RIA) 54106; April 5, 1954
*247 1. Fraud: Proof. - Evidence of understatements of income not sufficient to show intent to defraud. 2. Failure to file return on time: Reasonable cause: Section 291(a). - No addition to tax proper where signed blank return and signed check in amount shown to be due according to computation made by tax advisor's office were left with tax advisor but not filed due to inadvertence of employee of tax advisor. Ralph U. Heminger, Esq., and Duane P. Benson, Esq., for the petitioners. Merl B. Peek, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax and penalties as follows: Fraud
Delinquency
Year
Deficiency
Penalty
Penalty
1945
$2,470.16
$1,235.08
1946
4,203.87
2,101.94
1947
6,844.40
3,422.20
1948
937.88
468.94
$234.47
1949
2,900.22
1,450.11
The parties have agreed upon the amount of taxable income and deficiencies for each year. Only the penalties are contested. Findings of Fact Petitioners are husband and wife. Harry filed individual returns for 1945, 1946, and 1947. Joint returns were filed for 1948 and 1949. All returns *248 were filed with the collector of internal revenue for the district of Iowa. Harry was 63 years of age at the time of this hearing. He attended country grade school and began farming at the age of 16, helping his father. He and Martha were married when he was 30. They have six children, four boys and two girls. During the taxable years Harry farmed about 460 acres of land, including 150 acres of corn, 60 acres of small grain, and 250 acres of pasture. By far the largest part of the farming operation consisted in raising hogs and some cattle. Most of the grain raised on the farm was fed. Harry kept no formal books of account. All receipts from his farming were deposited in a single bank account in his name and practically all expenditures were made by checks drawn on that account. When he sold hogs or cattle he placed written receipts showing the number of livestock delivered to a particular customer and the price in a cupboard in the farm house. Harry received bank statements and cancelled checks once a month from his bank. He paid little attention to the details of his account. When necessary he would check with the bank to ascertain the balance in the account. Harry did *249 not prepare any of the tax returns for the years in question. They were prepared in the office of an attorney in Wilton Junction, Iowa, on the basis of figures submitted by Harry. These figures were compiled from the receipts kept in the cupboard and notes of expenditures gleaned from checks stubs. Actual preparation of the returns was done by the daughter of the local attorney who was also his secretary and who had considerable experience in preparing income tax returns. Either she or her father had always filed the petitioners' returns. Harry had never had income tax troubles before the years in question. His reputation for honesty was good. He cooperated fully with respondent's agents and placed at their disposal all available records. Some mistakes showed up on audit of the returns which were against the interest of petitioners. The following table shows the total gross income reported on the returns and the correct amounts as now agreed on by the parties. Year
Reported
Correct
1945
$ 5,959.18
$12,799.93
1946
9,375.52
20,302.67
1947
6,321.02
25,806.20
1948
13,386.15
15,226.76
1949
15,272.71
22,650.63
Petitioners received a thirty day *250 extension to April 15, 1949, within which to file their 1948 return. On April 9, 1949, they executed the return in blank and left it in the office of their local attorney, who together with his daughter was charged with the responsibility for preparing and filing the return. At the same time Harry signed a check for the amount of the tax due as computed by the attorney's daughter. The check was also left with the return. An employee in the office whose duty it was to mail and file returns inadvertently placed the completed return and the check in the files. Neither Harry nor his wife had knowledge that their 1948 return had not been filed until February 1950. Subsequently Harry paid a 25 per cent penalty based on the tax due on the original return. No part of any of the deficiencies was due to fraud with intent to evade tax. The failure to file the return for 1948 within the prescribed time was due to reasonable cause and not to willful neglect. Opinion The parties agree on the well established principles that "fraud with intent to evade tax" involves a state of mind; that it is seldom possible to establish fraud by direct evidence, and that the requisite intent or lack of *251 it is to be determined from all the facts and circumstances of record. No citation of authority in support of those principles is necessary. It is obvious here that respondent relies heavily on the substantial understatment of income as establishing fraudulent intent and cites cases in which that factor was an important one in sustaining respondent's determination. But understatement alone is not determinative, though the fact that understatements occurred in each of several years would under some circumstances be strong evidence of fraud. ; ; . In view of the omissions here admitted we have carefully scrutinized the entire record for evidence of fraud. The worst we can find against petitioners is that they were grossly negligent in keeping records and furnishing information to the persons who prepared their returns for them. We cannot find, however, that the omissions were the result of a fraudulent intent to avoid taxes lawfully due. The remaining issue has to do with the penalty for failing to file the 1948 return within the time prescribed *252 by law. We think the underlying findings of fact amply sustain the conclusion that the failure was due to reasonable cause and not to willful neglect. Cf. In ; The parties have stipulated the following deficiencies exclusive of fraud and other penalties: Stipulated
Year
Deficiency
1945
$2,075.36
1946
3,856.66
1947
7,403.12
1948
421.12
1949
2,057.72
Decision will be entered in accordance with the stipulation.